# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KLINT KUCK,

                    Petitioner,              :    Case No. 3:18-cv-157

    - vs -                             District Judge Thomas M. Rose
                                         Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
  London Correctional Institution
                                    :
                    Respondent.

# REPORT AND RECOMMENDATIONS

This action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus is before the Court for decision on the merits on the Amended Petition (ECF No. 7), Petitioner's initial Brief in Support (ECF No. 6), the State Court Record (ECF No. 13), the Return of Writ (ECF No. 14), and Petitioner's Traverse/Reply (ECF No. 21).

## Procedural History

On September 29, 2014, the Darke County grand jury indicted Petitioner Klint Kuck on charges of sexual assault, kidnapping, and furnishing alcohol to two underage customers, "Sara" and "Jane," on separate occasions in July 2012 and February 2013. Over Kuck's objection, the charges were tried together. Kuck was convicted of two counts of rape and on the alcohol charges, but acquitted of kidnapping, and sentenced to seven years imprisonment. Kuck appealed and his

convictions were affirmed. *State v. Kuck*, 2016-Ohio-8512, 79 N.E. 3d 1164, 2016 Ohio App. LEXIS 5349 (Dec. 29, 2016), appellate jurisdiction declined, 150 Ohio St. 3d 1444 (2017).

Kuck also filed a petition for post-conviction relief claiming ineffective assistance of trial counsel and that the verdicts were against the manifest weight of the evidence. The trial court denied the petition and Kuck appealed, but the trial judgment was affirmed. *State v. Kuck,* 2018 Ohio App. LEXIS 3545 (2nd Dist. Aug. 17, 2018). When the Return of Writ was filed, Kuck's time to appeal to the Supreme Court of Ohio had not yet expired but was due to expire October 9, 2018. A check of that court's docket on December 21, 2018, showed no appeal had been taken.

Kuck, represented by counsel, filed his Petition for writ of habeas corpus in this Court on May 9, 2018, pleading the following Grounds for Relief:

> **Ground One:** Petitioner was denied his right to a fair trial when the trial court refused to dismiss a potential juror for cause when she stated that she could not judge Petitioner fairly.
>
> **Supporting Facts:** During voir dire, a potential juror told the trial court that she had had a sin [sic] who was raped, who had since passed away. Although the trial court tried to rehabilitate her, she stated that she was not sure that she would be able to listen to form her own opinion about what had happened. When trial counsel questioned her, she stated "I don't think I could be fair." When trial counsel moved to dismiss her for cause, the trial court denied the motion, forcing counsel to use Mr. Kuck's last peremptory challenge.
>
> **Ground Two**: Petitioner was denied his right to effective assistance of counsel.
>
> **Supporting Facts:** Trial counsel failed to move for acquittal at the close of the State's case and the close of evidence; failed to prepare to cross examine the complaining witnesses by having their recorded statements transcribed; failed to object to improper jury instructions; failed to object to incorrect statements by the trial court as to the elements and standards of proof; failed to object to the admission of improper evidence regarding the alleged victims, and Mr. Kuck's own sexual history; and failed to object to prosecutorial

misconduct through leading questions, hearsay, and blatant appeals to the jury's emotions.

**Ground Three:** Petitioner was denied his right to a fair trial by prosecutorial misconduct.

**Supporting Facts:** The prosecutor introduced irrelevant personal information from the complaining witnesses in order to bolster their testimony and appeal to the jury's emotions; introduced testimony about Mr. Kuck dating younger women, to make Mr. Kuck look untrustworthy; accused Mr. Kuck of treating women like "a piece of meat", looking for "another notch in the belt", and not intending to date or even call either of the complaining witnesses after having sexual encounters with them in an effort to appeal to the jury's emotions; used leading questions; and solicited salacious hearsay testimony from a witness in an effort to make Mr. Kuck look bad.

**Ground Four**: Petitioner was denied his right to a fair trial when the trial court refused to sever unrelated charges.

**Supporting Facts**: Petitioner's interaction with complaining witness D.D. happened on July 13th, 2012, in Darke County, Ohio. Petitioner's interaction with complaining witness L.C. happened February 23, 2013, in Preble County, Ohio. The two incidents happened seven months apart, in different counties. When trial counsel moved the trial court to sever the charges for trial, the trial court refused.

**Ground Five**: Petitioner was denied his right to a fair trial when the trial court allowed the introduction of evidence that the complaining witnesses "blacked out" to be considered evidence that the complaining witnesses' ability to consent to sexual conduct was impaired.

**Supporting Facts**: Both complaining witnesses testified that they did not remember portions of their interactions with Petitioner. Evidence of loss of memory is not evidence of an impaired ability to consent to sexual conduct. However, the trial court allowed the jury to consider evidence of lack of memory as evidence of impaired ability to consent to sexual conduct.

**Ground Six**: Petitioner was denied his right to a fair trial when the trial court gave an instruction that created a mandatory presumption.

**Supporting Facts:** The trial court gave a jury instruction that read, in pertinent part, "The consumption of large amounts of alcohol in

a short period of time is evidence that voluntarily [sic] intoxication caused substantial impairment." Another portion of the jury instructions stated that "Stumbling, falling, slurred speech, passing out and vomiting are all evidence that an intoxicated person is substantially impaired." These instructions created the presumption that if the jury found any of these things: consumption of large amounts of alcohol in a short period of time, stumbling, falling, slurred speech, passing out, or vomiting, they must find that the complaining witness' ability to consent to sexual conduct was substantially impaired.

**Ground Seven**: Petitioner was denied his right to a fair trial when the trial court gave an instruction on sexual battery as a lesser included offense of rape, but did not instruct the jury on the difference in the elements of the crimes.

**Supporting Facts**: The trial court instructed the jury on the supposed "lesser included offense" of sexual battery with regard to the rape charges regarding both complaining witnesses. However, under Ohio law, the elements of sexual battery are indistinguishable from the elements of rape: sexual conduct, with a person who is not the defendant's spouse, while that person's ability to resist or consent is substantially impaired, and the defendant knows or has reason to Code Sections 2902(A)(1)(c), 2907.03(A)(2); OJI CR 507.02(A)(1); OJI CR 507.03. The trial court did not instruct the jury on the additional element that distinguishes rape from sexual battery, and the Ohio Courts do not agree on the nature of that element.

(Petition ECF No. 1, Page ID 26-30.)

# Analysis

## Ground One:  Failure to Excuse Unqualified Juror for Cause

In his First Ground for Relief, Kuck claims he was denied a fair trial because he was required to use a peremptory challenge to remove a juror who had said she doubted her ability to

be fair in this rape case because her son had been raped as a young man. The Second District

upheld the trial judge's decision, holding

> [*P56] Here, the trial court implicitly found, based on the
> prospective juror's answers, that despite her assertion to the
> contrary, she could be a fair and impartial juror. While the
> prospective juror believed that she would not be able to judge
> properly, the trial court, through its questions, was able to show that
> she would do her duty properly. We think that this conclusion is
> reasonable.

*State v. Kuck,* 2016-Ohio-8512. Assuming without conceding that this was error, Respondent

notes that the loss of a peremptory challenge does not violate the constitutional right to an impartial

jury so long as the biased juror does not sit. (Return, ECF No. 14, PageID 2154, relying on *Ross

v. Oklahoma,* 487 U.S. 81 (1988), where the Court stated "so long as the jury that sits is impartial,

the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the

Sixth Amendment was violated." *Ross*, 487 U.S. at 88 (citing *Hopt* v. *Utah*, 120 U.S. 430, 436 (1887),

and *Spies* v. *Illinois*, 123 U.S. 131 (1887)).

Petitioner agrees that Ohio law, like that of Oklahoma, requires a defendant to use a

peremptory challenge to remove a juror he has unsuccessfully challenged for cause. This case is

different from *Ross*, Kuck argues, because he had to use his last peremptory to remove the

challenged juror, whereas Ross had eight of his nine peremptory challenges left (Reply, ECF No.

21, PageID 2218, citing *State v. Rowe*, 1988 Ohio App. LEXIS 2123 (2nd Dist. Jun. 1, 1988)). The

Magistrate Judge notes that in *Rowe* Judge Brogan dissented on the ground that, because the

questionable juror had been excused, any error in not excusing her for cause was harmless since

the deciding jury was impartial. *Id.* at *14-15, citing *Gray v. Mississippi*, 481 U.S. 648 (1987).

In any event, the analysis of this claim in the Reply reverses the standard for habeas corpus relief. To obtain relief, a petitioner must show that his conviction is contrary to or an unreasonable application of clearly established Supreme Court precedent, not that his case is distinguishable from a relevant Supreme Court case. To put it differently, the Supreme Court has never held that forcing a defendant to use his last peremptory to remove an unsuccessfully challenged venire man or woman is unconstitutional. The holding in *Ross* is that if the challenged juror does not sit, there is no constitutional violation, without any discussion of how many peremptory challenges the defendant had left. While the distinction Petitioner argues might be persuasive if this Court were deciding the constitutional question *de novo*, we may not do that in habeas corpus.

In his initial Brief, Kuck relied on *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005). Respondent distinguishes *White* in that the biased juror there was allowed to remain on the jury during the penalty phase of that capital case. Kuck responds that the Sixth Circuit in *White* overturned the Ohio Supreme Court's decision in the same case, reported at 82 Ohio St. 3d 16 (1998), but the Second District had relied on the Ohio Supreme Court decision.

In *White* the Supreme Court of Ohio upheld the seating of a challenged venireman as an appropriate exercise of trial judge discretion. The Sixth Circuit overturned only that portion of the trial judge's decision that related to impartiality in the penalty phase.[1] *White v. Mitchell* speaks only to the standard to be used in evaluating whether a juror is impartial; it does not address at all the question presented by Ground One of whether it is unconstitutional to require a defendant to use his or her last peremptory challenge to remove an unsuccessfully challenged venireman.

---

[1] *White* is a capital case. The Sixth Circuit issued the writ only as to the penalty and not as to the conviction.

Kuck has not shown that the Second District's decision is an unreasonable application of the holdings in Supreme Court precedent. Ground One should therefore be dismissed on the merits.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Kuck claims he received ineffective assistance of trial counsel in that his trial attorney (1) failed to move for acquittal at the close of the State's case and the close of evidence; (2) failed to prepare to cross examine the complaining witnesses by having their recorded statements transcribed; (3) failed to object to improper jury instructions; (4) failed to object to incorrect statements by the trial court as to the elements and standards of proof; (5) failed to object to the admission of improper evidence regarding the alleged victims, and Mr. Kuck's own sexual history; and (6) failed to object to prosecutorial misconduct through leading questions, hearsay, and blatant appeals to the jury's emotions.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

As noted above, Petitioner makes six distinct claims of ineffective assistance of trial counsel which will be examined *seriatim.*

**Subclaim 2(1)  Ineffective Assistance in Failing to Make Motions for Judgment of Acquittal**

Kuck asserts his trial attorney provided ineffective assistance of trial counsel when he failed to move for a judgment of acquittal at the close of the State's case and at the close of the evidence.  Kuck presented this claim to the Second District on direct appeal and that court decided the claim as follows:

> [*P75]  Kuck first argues that trial counsel was ineffective for not moving for acquittal on the rape offenses on the grounds that the State failed to present any evidence that Kuck knew that either Sara or Jane was "substantially impaired." But the failure to move for acquittal under Crim.R. 29 does not rise to the level of ineffective assistance of counsel if the motion would have been futile. *State v. Faulkner*, 2d Dist. Clark No. 2892, 1993 Ohio App. LEXIS 2175, 1993 WL 125452 (Apr. 22, 1993). Here, we conclude in our review of the second assignment of error that the evidence is sufficient to find that Kuck knew Sara and Jane were substantially impaired. So a motion for acquittal would have been futile.

*State v. Kuck, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Petitioner does not argue this claim in his Brief.  In his Reply, he makes this subclaim turn, as the Second District did, on his insufficiency of the evidence claim (ECF No. 21, PageID 2220).  If the motion for judgment of acquittal would indeed have been futile, then it cannot have been ineffective assistance of trial counsel to fail to make it.  This Court must therefore examine the

underlying sufficiency of the evidence claim. That claim was made as the second assignment of error on direct appeal. The Second District stated the standard for such a claim as follows:

> A challenge to the sufficiency of the evidence supporting a conviction requires that we consider "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" [*State v.] Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, at ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997 Ohio 372, 683 N.E.2d 1096 (1997).

*State v. Kuck, supra,* quoting *State v. Montgomery*, 148 Ohio St. 3d 347, ¶ 74 (2016). Applying that standard the Second District evaluated Kuck's claim as to the rape victim[2] (referred to in the opinion as "Sara") follows:

> 1. *Rape and sexual battery*
> 2.
> [*P90] Kuck was convicted of rape under R.C. 2907.02(A)(1)(c), which prohibits sexual conduct with another when "[t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition." And he was convicted of sexual battery under R.C. 2907.03(A)(2), which prohibits sexual conduct with another when "[t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." Kuck's sufficiency and weight arguments focus on whether the victims were substantially impaired and what he knew about their impairment.

> a. Substantial impairment

---

[2] In his Reply, Kuck argues only the rape charge. The Second District's sufficiency analysis includes both rape and sexual battery, but the latter is not quoted.

[*P91]  The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *State v. Zeh*, 31 Ohio St.3d 99, 104, 31 Ohio B. 263, 509 N.E.2d 414 (1987). "'"Substantial impairment" need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct.'" *Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, at ¶ 21, quoting *State v. Dorsey*, 5th Dist. Licking No. 2007-CA-091, 2008-Ohio-2515, ¶ 43. "[V]oluntary intoxication is a 'mental or physical condition' that could cause substantial impairment under R.C. 2907.02(A)(1)(c)." *Id.*

[*P92]  We consider first the evidence supporting the jury's finding that Sara's ability to resist or consent to sexual conduct with Kuck was substantially impaired because of a mental or physical condition. Sara testified that soon after she arrived at the bar she drank two shots and half a beer, which Kuck had brought to her. She said that after the second shot she felt very tired, so she went out to her car where she fell asleep. Her girlfriend came out and woke her up, and Sara "felt really weird, like, physically, like something wasn't right." (Tr. 255). Sara said that she then went back into the bar and drank the shot that Kuck handed her. Said Sara: "And I remember after I took it, it just—I just—something didn't feel right and I was really tired still and I remember looking across the clock in the bar and then it felt like my knees were about to collapse." (*Id.* at 212). The battery in her cell phone was dead, so she went to her car to recharge it. "And then I don't remember getting to my car but I remember walking out the front of the bar and there was like a crowd of people that weren't there previously that were just standing out front. And I walked through them and then I don't remember what happened." (*Id.* at 213, 258). The next thing she remembered was Kuck waking her up by knocking on her car window or opening the car door. Then she blacked out: "I didn't fully make it out of my car. I wasn't walking wobbly. I stood up and then I blacked out." (*Id.* at 260). Then:

> I remember waking up but I didn't open my eyes yet because I felt something. I felt—I felt him [Kuck] penetrating me with his penis in my vagina, and I didn't know what was going on. But then I moved my hips around and I remember I heard him grunt twice and then my head

was down and I shot it up and I yelled "What the f**k?" And he took off running.

And then I remember I was so confused and mad and I didn't know what was going on and I couldn't stand though. And then I took a few steps to my right and I remember passing out on something which I later found was an air conditioner but then I don't remember nothing else.

(*Id.* at 214). She also said, "I remember wanting to chase him but I couldn't. I just took a few staggers to the right and just passed out on an object which I later found out was an air conditioner. And then the rest of the night nothing besides at one point I remember for like two seconds waking up in the back of his truck and watching—looking at him and [her girlfriend] talking." (*Id.* at 216). The next thing she remembered was waking up at her girlfriend's home. (*Id.* at 217).

[*P93]  Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that Sara's ability to appraise the nature of, or to control her conduct was reduced, diminished or decreased. That she repeatedly blacked out and had lapses of memory suggests this most strongly.  . . . .

[*P94]  [concerns other victim]

[*P95]  We have said that the consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to find that the victim was substantially impaired. *Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, at ¶ 22 (over the course of the evening and early morning, the victim drank half a pitcher of beer, three cans of beer, and seven shots of alcohol). Here, Jane consumed at least ten alcoholic drinks that night. The consumption of that amount of alcohol is sufficient evidence for reasonable jurors to find, beyond a reasonable doubt, that her ability either to appraise the nature  of her conduct or to control her conduct was reduced, diminished, or decreased. And we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice by finding that Jane's ability to appraise the nature of or control her own conduct was substantially impaired.

b. Knowledge of substantial impairment

[*P96]  To prove rape under R.C. 2907.02(A)(1)(c), the State must establish not only that the other person was substantially impaired

but also that the defendant knew or had reasonable cause to believe that the other person's ability to resist or consent was substantially impaired because of a mental or physical condition. Similarly, to prove sexual battery under R.C. 2907.03(A)(2), the State must establish that the defendant knew that the other person's ability to appraise the nature of or control the other person's own conduct was substantially impaired. Kuck argues that there is insufficient evidence to support finding that he knew or had reasonable cause to believe that either Sara or Jane was substantially impaired and that the manifest weight of the evidence is against this finding.

 [*P97]  Sara's testimony suggests that during her blackouts that night she was unconscious. Kuck could not have failed to notice this. That she was unconscious during the sexual conduct did not simply impair Sara from resisting or consenting but precluded either all together. The evidence is sufficient.

*State v. Kuck, supra.*

Kuck does not here make a direct claim that the evidence to support conviction was insufficient, but he relies on that argument to undergird his claim that his attorney provided aitc when he did not move to dismiss on that basis.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam).

Kuck's argument as this Court understands it is that the Second District erroneously equated lack of memory or "blackout" with unconsciousness, but that is a false equivalence according to *State v. Doss,* 2008-Ohio-449 ¶ 18 (8th Dist.). In *Doss* the victim was heavily intoxicated and had no memory of having sex with the defendant. In the cited paragraph, the Eighth District held:

> **[*P18]** As *Schmidt* demonstrates, when reviewing substantial impairment due to voluntary intoxication, there can be a fine, fuzzy, and subjective line between intoxication and impairment. Every alcohol consumption does not lead to a substantial impairment. Additionally, the waters become even murkier when reviewing whether a defendant knew, or should have known, that someone was impaired rather than merely intoxicated. Of course, there are times when it would be apparent to all onlookers that an individual is substantially impaired, such as intoxication to the point of unconsciousness. On the other hand, "a person who is experiencing [an alcohol induced] blackout may walk, talk, and fully perform ordinary functions without others being able to tell that he is 'blacked out.'" Westin, Peter, Egelhoff Again (1999), 36 Am.Crim.L.Rev. 1203, 1231. In addition, J.P.'s [the complainant] testimony describes a blackout as "where someone who drinks alcohol heavily can function and be, appear to be there, and conscious, but in reality, they would not have any memory of what

they did or where they were." Furthermore, Aaron Reynolds, a classmate of J.P.'s at NEOUCOM, who was also at Club Moda on the night in question, testified that he blacked out from approximately midnight until leaving the bar between 2:00 and 2:30 a.m. While Reynolds did not remember anything from that time period, he stated that his friends told him that he was dancing and having a good time. He also testified that when he saw J.P. at the bar, "she was intoxicated, but she wasn't unmanageable."

In other words, J.P. may in fact have been substantially impaired, but might not have appeared to Doss to be substantially impaired.

*Doss* should not be read as holding that a person who is "blacked out" can never appear to a potential sex partner to be substantially impaired. Instead, *Doss* holds that, upon the evidence presented, the State had not proved beyond a reasonable doubt that Doss knew or should have known J.P. was substantially impaired. J.P. herself admitted that could happen and an eyewitness who knew her said she was "intoxicated" bot not "unmanageable."

Even if *Doss* purported to be stating a rule of law rather than a conclusion based upon the evidence before the Eighth District, it would not be binding on the Second District. Beyond that, the facts before the Second District are significantly different. Sara blacked out repeatedly and was not able to stand at some points. Her description of her blackouts suggested to the Second District that she might have been unconscious at times, a condition which would have shown substantial impairment and which could not have been mistaken by Kuck as being intoxicated but not unmanageable.[3]

Given the double deference required by AEDPA, this Court cannot say that the Second District's application of *Jackson v. Virginia* was objectively unreasonable in this case. Because

---

[3] Kuck claims in his Reply that "Sara stated she did not remember having sex with Petitioner," but provides no record reference. The Second District, in contrast, quotes Sara as remembering Kuck vaginally penetrating her. ¶ 92. That certainly constitutes "having sex."

there was sufficient evidence to convict, it was not ineffective assistance of trial counsel to fail to move for a judgment of acquittal.

**Subclaim 2(2)  Ineffective Assistance in Failing to Obtain Transcripts of Recorded Interviews with Witnesses.**

In Subclaim 2(2), Kuck avers there existed audio recordings of statements made by each of the victims to law enforcement which, had they been transcribed, could have been effectively used to cross-examine and impeach the victims (Brief, ECF No. 6, PageID 57-59).  This claim was part of Kuck's first assignment of error on direct appeal and the Second District decided it in part as follows:

> [*P80]  Kuck says that because there is no transcription of the interview there was no way to prove to the jury that Jane made these statements to the detective, short of playing the recording. So counsel's cross-examination on these statements failed, says Kuck, and trial counsel simply moved on to the next topic. But as with Sara, the trial transcript suggests that counsel was simply done asking about Jane's interview.

> [*P81] Counsel cross-examined both victims at trial using copies of their prior written statements. And parts of the recorded interviews were played during the trial. There is certainly nothing close to a showing here that the jury would have obviously come to different conclusions about Kuck's guilt if only transcripts of some pretrial interviews had been obtained and used.

*State v. Kuck, supra.*

Kuck cites no authority for the proposition that it is deficient performance for a cross-examiner to rely on original voice recordings of prior inconsistent statements rather than written transcriptions of those recordings.  Indeed, hearing the prior inconsistent statement from the witness's own mouth would likely be more effective than the written transcripts, and certainly since the Second District also found there is no showing of prejudice.  Subclaim 2(2) should be

dismissed on the merits because the Second District's decision is not an objectively unreasonably application of *Strickland*.

**Subclaim 2(3)  Ineffective Assistance in Failing to Object to Jury Instructions**

In his third subclaim of ineffective assistance of trial counsel, Kuck asserts his trial attorney provided ineffective assistance when he failed to object to jury instructions which Kuck considered improper.  He raised this ineffective assistance claim in the Second District which rejected it on the basis that the instructions were not erroneous.  Since it cannot be ineffective assistance of trial counsel to fail to object to proper instructions, this conclusion of the Second District is entitled to deference under 28 U.S.C. § 2254(d)(1).

**Subclaim 2(4):  Ineffective Assistance in Failing to Object to Trial Court Statements on the Elements and Standard of Proof**

Kuck presented this claim to the Second District which decided it as follows:

> [*P83]   Kuck argues that trial counsel was ineffective for not objecting to certain comments made by the trial court about the State's burden of proof and the elements of rape. The trial court began voir dire by "talk[ing] a little bit about legal concepts." (Tr. 31). The court told the prospective jurors that the State must prove guilt and then explained:
>
>> So the State of Ohio has to prove guilt but how much proof does it take? Well, there is a legal standard. The standard is called you have to be guilty beyond a reasonable doubt. The State has to prove its case beyond a reasonable doubt. Did anybody hear a number in there, what percentage that is? It's not.
>>
>> In a criminal case, there's no such number. Sometimes it drives people crazy. Proof beyond a reasonable doubt is not

18

expressed as 99.9 percent. It's not expressed as 66 2/3 percent. It's not 75. It's not any kind of a number. You have to be thoroughly convinced about the truth of the charge. So what amount of evidence it takes for each of you to be thoroughly convinced is an individual decision. * * *

* * * All I can tell you is the State of Ohio has to prove guilt beyond a reasonable doubt before somebody is no longer presumed innocent. Everybody understand the concepts?

(*Id.* at 31-33). Kuck says that the comments about percentages were inappropriate, because they confused the jury about the standard of proof and because they were made before a jury was even selected.

[*P84]  The trial court also explained to the prospective jurors what the rape charges allege:

As to the first victim, the first count is engaging in sexual conduct when that person's ability to consent or to resist was impaired because of some sort of mental, physical or physiological condition.

The title of that's called rape but I don't like to use that word because it doesn't mean anything. So it's sexual conduct with another person when their ability to consent or resist is impaired.

(*Id.* at 49).

[*P85]   Kuck says that these statements misstate the elements of rape under R.C. 2907.02(A)(1)(c), which requires not simply impairment but *substantial* impairment. Because trial counsel failed to object to this misstatement of the law, says Kuck, the jury, at the very beginning of the trial, was misled about what the State had to prove.

[*P86]  When the trial court instructed the jury after the close of all evidence, it gave correct instructions of the law with respect to the standard of proof and the elements of rape. These instructions cured any misstatements or simplifications made by the court during voir dire, since  "[t]he jury is presumed to follow the instructions given to it by the trial judge." (Citation omitted.) *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 147. Because the court's statements during voir dire were not formal jury instructions,

we do not think that counsel was required to object and he was not
ineffective for not doing so.

*State v. Kuck*, 2016-Ohio-8512.

In his Brief (ECF No. 6, PageID 61-62), Kuck makes no attempt to show that this was an
unreasonable application of *Strickland*, essentially finding no prejudice. The Magistrate Judge
agrees that the Second District's decision is entitled to deference under § 2254(d)(1) in the absence
of any showing of prejudice or even any argument that it occurred.

## Subclaim 2(5) Ineffective Assistance in Failure to Object to Improper Evidence

In his Subclaim 2(5), Kuck asserts he received ineffective assistance of trial counsel when
his attorney did not object to the improper admission of certain evidence. The Second District
decided this claim as follows:

> 5. *Failing to object to the admission of evidence*
>
> [*P87] Lastly, Kuck argues that trial counsel was ineffective for not
> objecting to hearsay, to improper leading questions, to questions
> prohibited by the rape-shield statute, and to character evidence
> regarding both Kuck's bad character and the victims' good character.
> We considered the underlying legal propositions in our review of
> the fourth assignment of error. Once again, Kuck recasts
> propositions of law as ineffective assistance. We rejected the
> underlying propositions on their merits, so we reject Kuck's
> ineffective assistance claim here.

*State v. Kuck*, 2016-Ohio-8512. It cannot be ineffective assistance of trial counsel to fail to raise
objections that are without merit. Therefore, this subclaim should also be denied on the merits

**Subclaim 2(6)  Ineffective Assistance for Failure to Object to Prosecutorial Misconduct**

In his last trial attorney ineffective assistance claim, Kuck asserts he received ineffective assistance of trial counsel when his trial attorney did not object to a number of instances of asserted prosecutorial misconduct.

So far as the Court can determine, Kuck did not raise this subclaim on either direct appeal or appeal from denial of his petition for post-conviction relief.  It is therefore subject to analysis as procedurally defaulted.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default.  *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).

Because these asserted instances of ineffective assistance of trial counsel are evident from

the record, they could have been raised on direct appeal in the same way that Kuck's other subclaims were raised. Because they were not, they are now barred by Ohio's criminal *res judicata* rule adopted in *State v. Perry,* 10 Ohio St. 2d 175 (1967), which is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Kuck's Subclaim 2(6) should be dismissed as procedurally defaulted.

## Ground Three: Prosecutorial Misconduct

In his Third Ground for Relief, Petitioner complains that various acts of prosecutorial misconduct deprived him of a fair trial. This was his fourth assignment of error on direct appeal which the Second District decided on the merits. It first set forth the governing Supreme Court standard for evaluating such claims, quoting *State v. McKelton*, 148 Ohio St.3d, 261, 308, 2016-Ohio-5735, ¶ 257 (2016):

> When reviewing a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To answer that question, we consider whether the conduct was improper and whether it prejudicially affected the defendant's substantial rights. In evaluating prejudice, we determine the effect of the misconduct "on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

*State v. Kuck*, 2016-Ohio-8512 at ¶ 28. With respect to misconduct claims revolving around

evidentiary issues, the court found the evidence in question was properly admissible and thus it was not misconduct to elicit it. *Id.* at ¶¶ 29-31. With regard to comments the prosecutor made about testimony on Kuck's lifestyle and treatment of women, the Second District found that the complained-of comments were "mild compared to statements the Ohio Supreme Court has allowed describing other defendants" and thus not misconduct. *Id.* at ¶¶ 32-35.

Concerning the complaint that the prosecutor asked witnesses leading questions, the Second District found the questions either were not unambiguously leading or were within the discretion of the trial court to allow. *Id.* at ¶¶ 36-37. It also found that no objection had been made, so review was for plain error only. *Id.* at ¶ 37. Plain error review constitutes an enforcement of the contemporaneous objection rule, *Fleming v. Metrish*, 556 F.3d 520, 539 (6th Cir. 2009), which means this part of the prosecutorial misconduct claim is procedurally defaulted. The same procedural default applies to Kuck's complaint that the prosecutor elicited hearsay. *Id.* at ¶ 38.

In support of this Ground for Relief, Petitioner cites the same general standard relied on by the Second District, albeit from a different source (Brief, ECF No. 6, PageId 66, citing *Smith v. Warden*, 2010 U.S. Dist. LEXIS 78706, *65-66 (S.D. Ohio 2010), relying on *Donnelly* and *Darden, supra*, as did the Second District. Kuck makes no effort in his Brief to show that the Second District's decision on this claim is an objectively unreasonable application of these two Supreme Court cases.

To the extent the Second District's ruling on this assignment of error was based on its conclusion that the elicited testimony was not objectionable, that is a ruling on Ohio evidence law questions. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is

not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).  A federal habeas court may not re-evaluate a state court's interpretation of state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*).  Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983); *Bell v. Arn,* 536 F.2d 123 (6th Cir. 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975).

Having examined both the evidence elicited from the victims and from and regarding Petitioner, the Court does not find admission of the complained-of evidence denied Petitioner a fundamentally fair trial.  To the extent the Second District reviewed only for plain error, it was enforcing a procedural default.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).  Kuck has made no showing of cause and prejudice to excuse these procedural defaults; his claim that it was ineffective assistance of trial counsel not to object is dealt with above.

Ground Three should be dismissed with prejudice.

**Ground Four:  Denial of Severance**


In his Fourth Ground for Relief, Petitioner asserts he was denied his right to a fair trial when the trial court refused to sever the two incidents for separate trials.  Kuck presented this claim as part of his Fifth Assignment of Error and the Second District decided it as follows:

> [*P41]  Kuck argues that the trial court erred by overruling his motion to sever the offenses against Sara from the offenses against Jane. He says that the joinder prejudiced him by implying that he had a habit of engaging in sex with younger women.

> [*P42]  Ohio "law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), quoting Crim.R. 8(A). But a defendant is entitled to severance under Crim.R. 14 if he can show prejudice. *Id.* "'Even then, the state can overcome a defendant's claim of prejudicial joinder by showing either that (1) it could have introduced evidence of either of the offenses, if they had been severed for trial, as 'other acts' under Evid.R. 404(B) or (2) the 'evidence of each crime joined at trial is simple and direct.'" *McKelton*, 2016-Ohio-5735, at ¶ 299, quoting *id.* There are common threads in the two events: underage drinking and intoxication at Kuck's bar with claims that he took advantage of both women. Evidence of one may be admissible in the other when it goes to show "motive, opportunity [or] intent." Evid. R. 404(B).

> [*P43]  Assuming that Kuck showed prejudice from the joinder of the offenses, that prejudice was negated by the simple and direct nature of the evidence. The State first presented evidence of the offenses against Sara and then presented evidence of the offenses against Jane. The evidence could be easily segregated, making it unlikely that the jury would have confused the evidence proving the separate offenses. *Compare State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138 (concluding that the evidence of rape and kidnapping offenses against separate victims that occurred five years apart was simple and direct). **The court did not abuse its discretion by refusing to sever the offenses for trial.**

*State v. Kuck*, 2016-Ohio-8512.

The relevant Supreme Court precedent is cited in the Return of Writ, *Spencer v. Texas*, 385

U.S. 554 (1967), and *Marshall v. Lonberger*, 459 U.S. 422 (1983). However, Petitioner never argued this claim as a federal constitutional claim in the Second District and never cited any relevant Supreme Court case law. Instead, he argued the trial court "abused its discretion and/or erred when it denied Defendant's motion to sever and allowed the prejudicial joinder of the offenses." (Appellant's Brief, State Court Record, ECF No. 13, PageId 294.)

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way that provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987); *accord*, *Whiting v. Birt*, 395 F.3d 602 (6th Cir. 2005); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000). Because this claim was not fairly presented to the Second District as a federal constitutional claim, it is procedurally defaulted and should be dismissed on that basis.

**Ground Five:  Admission of Blackout Evidence**

In his Fifth Ground for Relief, Petitioner asserts that he was denied a fair trial when the trial judge permitted the jury to consider evidence that each of the victims "blacked out" during her sexual encounter with him as evidence that their ability to consent to sexual conduct with him was impaired.

The Respondent asserts this claim is procedurally defaulted because it was not presented to the Second District on direct appeal (Return, ECF No. 14, PageId 2177).  Petitioner makes no response to that defense in his Reply and it is well taken.  Ground Five should be dismissed as procedurally defaulted.

**Ground Six:  Jury Instruction Created a Mandatory Presumption**

In his Sixth Ground for Relief, Petitioner claims that the jury instruction given by the trial judge on "substantial impairment" created a mandatory presumption.  In particular, he complains of an instruction which read, "The consumption of large amounts of alcohol in a short period of time is evidence that voluntarily [sic] intoxication caused substantial impairment."  He further complains the jury instruction that stated that "[s]tumbling, falling, slurred speech, passing out and vomiting are all evidence that an intoxicated person is substantially impaired."

Kuck argued this claim as part of his Fifth Assignment of Error on direct appeal and the Second District decided it as follows:

> 2. *Jury instructions*
>
> [*P44]  Kuck next argues that the trial court gave improper jury instructions about the substantial-impairment elements of rape and sexual battery. Kuck did not  object to the instructions, so we review only for plain error.

[*P45]  The court gave these instructions about substantial impairment:

> Substantial impairment is established by demonstrating a present reduction, diminution or decrease in the victim's ability either to apprise the nature of his conduct or to control his or her conduct. Whether a person is substantially impaired does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim and by allowing the jury to do its own assessment of the person's ability to apprise or control one's own conduct. The determination of substantial impairment is made on a case-by-case basis depending on the facts determined at trial.
>
> Voluntary intoxication constitutes a mental or physical condition that can cause substantial impairment. The consumption of large amounts of alcohol in a short period of time *is evidence* that voluntarily [sic] intoxication caused substantial impairment. Evidence of substantial impairment can also come from a victim's inability to remember the events of the incident due to alcohol consumption. Stumbling, falling, slurred speech, passing out and vomiting are all evidence that an intoxicated person *is substantially impaired*.

(Emphasis added.) (Tr. 912). Kuck argues that the instructions in the second paragraph create a mandatory presumption that shifts the burden of proof from the State on an essential element of the offenses of rape and sexual battery. He says that these instructions had the effect of placing undue stress on the issue of substantial impairment, and made it appear that the issue was already decided. Kuck argues that by saying that something "*is* evidence"—as opposed to "*may be* evidence"—suggests that the jury must find substantial impairment if it finds that the person consumed large amounts of alcohol. Similarly, he argues that using the phrase "is substantially impaired" suggests that if the jury finds that the person stumbled, fell, had slurred speech, passed out, or vomited, it must find that the person was substantially impaired.

[*P46]  Only the first sentence in the above-quoted paragraphs comes from the *Ohio Jury Instructions*. *See* CR 507.02(A)(1). The second paragraph comes from the Third District's opinion in *State v. Lasenby*, 3d Dist. Allen No. 1-13-36, 2014-Ohio-1878. While not a

standard instruction, it is a correct statement of the law. We have said that "the consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to warrant allowing a jury to consider whether . . . [a person] was substantially impaired." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 22 (2d Dist.). And we have said that "stumbling, falling, slurred speech, passing out, or vomiting" are aspects of behavior that are evidence of substantial impairment. *Id.* at ¶ 24.

[*P47]  We do not think that the second paragraph creates any mandatory presumptions. An instruction creates a mandatory presumption if it, "both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts." *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989). In contrast, "[a] permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The instructions here do not tell the jury that if it finds that one of the victims consumed a large amount of alcohol in a short time, it must presume that the victim was substantially impaired. Similarly, the instruction does not tell the jury that if it finds that one of the victims was stumbling, falling, slurring her speech, passing out, or vomiting, it must presume that she was substantially impaired. Rather, the instruction says that these facts are simply evidence of substantial impairment. We see no plain error.

*State v. Kuck,* 2016-Ohio-8512.

Petitioner offers no response to the defense of procedural default made as to this Ground for Relief.  As pointed out above, plain error review is enforcement of the contemporaneous objection rule, not a waiver.  Ground Six should be dismissed on this basis.

Alternatively, Petitioner has not shown that the Second District's decision is an objectively unreasonable application of Supreme Court precedent.  It is true, as both parties agree, that a jury instruction that creates a mandatory presumption of an element in a criminal case violates the Constitution.  A crystal-clear way of presenting a permissive inference to a jury is to instruct them "if you find x, you may then find y" where y is an element of the offense.  Here the instruction

reads essentially "x is evidence of y." But it does not say "x is sufficient evidence of y," merely that it is some evidence. It is clear from its own prior cases that it cited that the Second District understood the constitutional prohibition and interpreted the language used as not violating that prohibition. This Court cannot say that is an objectively unreasonable way of applying the relevant precedent. Ground Six should therefore also be dismissed on the merits.

**Ground Seven:  Incomplete Jury Instruction on Sexual Battery**

In his Seventh Ground for Relief, Petitioner claims he was denied his right to a fair trial when the trial court gave an instruction on sexual battery as a lesser included offense of rape, but failed to instruct on the difference in elements between the two crimes.

Respondent asserts this claim is procedurally defaulted because it was never presented to the Second District on direct appeal (Return of Writ, ECF No. 14, PageId 2182). Petitioner responds that the claim was presented in his Motion to Certify a Conflict (Reply, ECF No. 21, PageId 2228).

After a change of counsel, Petitioner filed an Amended Brief in the Second District where he raised as an Assignment of Error the question "Does a trial court commit plain error when it instructs the jury on sexual battery as a lesser included offense of rape, where the elements of each are exactly the same?" (State Court Record, ECF No. 13, PageId 358.) The Second District noted that the Eleventh, Tenth, and Eighth District Courts of Appeals had all concluded that sexual battery as prohibited by Ohio Revised Code § 2907.03(A)(2) was a lesser included offense of rape as prohibited by Ohio Revised Code § 2907.02(A)(1)(c), while the Seventh District had concluded

sexual battery was a lesser included offense of rape under Ohio Revised Code § 290702(A)(1)(a). The Second District rejected Petitioner's argument that sexual battery was not a lesser included offense of rape by rejecting his argument that rape does not have an additional element. *State v. Kuck*, 2016-Ohio-8512 at ¶ 66. It did not reject his argument, made here, that the trial judge was required to instruct on the elements of the lesser included offense.

It is correct that in his Motion to Certify, Petitioner did discuss the conflict among the Ohio Courts of Appeals on what elements rape has that sexual battery does not (State Court Record, ECF No. 13, PageId 537-538). But that request for certification did not present to the Second District an opportunity to overturn Kuck's conviction because the trial judge had not instructed on the additional element of rape. Put another way, a motion to certify a conflict under Ohio law is not an opportunity to present a new assignment of error.

More fundamentally, however, the Second District noted Kuck had not objected to the instruction and its review was therefore only for plain error. *State v. Kuck, supra* at ¶ 62. As noted above, that was an enforcement of the contemporaneous objection rule, not a waiver.

Accordingly, Petitioner's Seventh Ground for Relief should be dismissed as procedurally defaulted.


**Procedural Default of Grounds Two, Three, Six, and Seven**


At the end of his Reply, Petitioner notes that as to all of the instances of failure to object which are being argued as procedural defaults by Respondent, he raised those claims also as ineffective assistance of trial counsel claims. This Report deals with the relevant ineffective assistance of trial counsel claims under Ground Two and concludes as to each of them that the

decision of the Second District on ineffective assistance of trial counsel also is entitled to AEDPA deference because it is not an unreasonable application of *Strickland v. Washington, supra.*

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis.*

January 11, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).